CASCO PRODUCTS CORPORATION et al. v.
G. M. MFG. CO., Inc.
No. 5592.

District Court, E. D. New York.
June 2, 1932.

Cooper, Kerr & Dunham, of New York City (Thomas J. Byrne, of New York City, of counsel), for plaintiffs.

William S. Pritchard, of New York City. for defendant.

CAMPBELL, District Judge.

This is an action in which plaintiffs seek relief by injunction and damages for the alleged infringement of patent No. 1,784,466, issued to Oscar Rensonnet, assignor to Henri Dujardin, for steering sight adapted to be fitted to the mudguards of motor vehicles, dated December 9, 1930.

Title to the patent in suit is vested in the plaintiff Henri Dujardin, and an exclusive license to manufacture, use, and sell devices, with right to grant licenses thereunder, is vested in the plaintiff Casco Products Corporation.

The plaintiff, Casco Products Corporation is a Connecticut corporation, and the defendant is a New York corporation, and has its principal place of business within the jurisdiction of this court.

The defendant interposed an answer setting up the defenses of invalidity and noninfringement, but on the trial and by its brief urged only the defense of invalidity.

The action is based on claims 2 and 3 of the patent in suit, which read as follows:

"2. An indicating device for the mud guards of automobiles comprising an upstanding member having a height materially elevating the upper end thereof above the mud guard of an automobile, an enlargement at the upper end of said member for increasing its visibility, said member having clamping means at its lower end for attaching the same flatwise against the outside edge of a mud guard of an automobile, whereby the said member is vertical and said enlargement is vertically above the edge of said mud guard."

"3. An indicating device for the mud guards of automobiles comprising an upstanding member having a height materially elevating the upper end thereof above the mud guard of an automobile, an enlargement at the upper end of said indicator for increasing its visibility, a hook at the lower end of said indicator whereby said member may be positioned vertically with a lower portion opposite said hook flatwise against the mud guard and with the hook behind the flange of a mud guard, and clamping screws in said hooked end directed toward the member for clamping the member flatwise to the mud guard and position said enlargement in direct vertical line above the outside edge of the mud guard of the automobile for indicating its position to the driver."

Both of these claims read directly on the defendant's devices in evidence (Exhibits 14

and 15), which devices comprise a stem, an indicator, or target at the upper end thereof for increasing visibility, and clamping means at the lower edge of a mudguard of an automobile.

The clamping means at the lower end of the device comprise a hook which fits behind the flange of the mudguard; clamping screws are secured from the inside of the hook and press against the inner edge of the fender to maintain the fender guide upon the mudguard of an automobile.

These devices undoubtedly infringe said claims 2 and 3 of the patent in suit, if the same be valid.

Plaintiff Dujardin commenced the manufacture of fender guides in the United States in 1929, and manufactured and sold about ten thousand fender guides, exemplified by Plaintiffs' Exhibits 1, 2 and 3.

Plaintiff, Dujardin, on March 11, 1931, granted an exclusive license to the plaintiff Casco Products Corporation under the patent in suit, and said corporation, shortly after it obtained its license, commenced to manufacture and sell fender guides, specimens of which were offered in evidence as Exhibits 11, 12, and 13.

From the time of the granting of said license to it, the plaintiff Casco Products Corporation has manufactured and sold about seventy-five thousand fender guides, and has paid and is continuing to pay royalty for its lawful use of the invention of the patent in suit.

Both plaintiffs advertised the fender guides manufactured by him and it, respectively.

The plaintiff Casco Products Corporation has granted licenses under the patent in suit to A. W. Rosen & Co., of New York City, and to the receiver of Apco Masperg Corporation, of Attleboro, Mass. The licensee, A. W. Rosen & Co., manufactured fender guides, Exhibit 16.

There were not included in the numbers hereinbefore recited the number of fender guides manufactured and sold by the last two above mentioned licensees.

The fender guides manufactured by the plaintiff Casco Products Corporation were properly marked as made under the patent in suit, and thereby notice of the patent in suit was given to the public by the plaintiffs.

The patentee in his specification said:

"My invention relates to a device adapted for use as steering sight or designed to indi-

cate the location of the mudguards in a motor vehicle.

"According to the present invention, the aforesaid device comprises a rod or arm carrying at its upper end a sight or aimer and having its bottom portion preferably curved to form a hook and adapted to engage the wing of the mudguard by merely pinching or by means of suitable clamping devices."

What the patentee designed to accomplish was to provide an indicator or target comprising a member capable of being supported vertically, and having at its lower end means for clamping it to the edge of an automobile fender, and having at the top or upper end a mass forming a sight, which is large enough for the driver to observe without consciously paying attention to it.

According to the patent, besides the embodiment shown therein, the device may be secured or made in the following ways:

The device may also be secured to the mudguard by any other convenient means, such as welding, brazing, riveting, or screwing, and may be made of metal or any other convenient material, solid or hollow.

The sight carrier may be cylindrical, or tapered, or of triangular, square, or polygonal section, or it may be of any different decorative or artistical shape, and the rod may be rigid, flexible, or semiflexible, telescopic, or consist entirely or partly of a spring or similar elastical device.

The sight or aimer may be made of metal, wood, or any other suitable material, painted or decorated in color or shape, in any one of a number of forms described, of an ordinary or rear view mirror, made luminous by the provision of a lamp or the like, or provided with light reflecting glasses or the like, or coated with any luminous or phosphorescent product.

The driver is apprised by the fender guide of the exact width of the vehicle, which is of great advantage to the experienced as well as the new drivers when driving in congested traffic, particularly with cars of present day manufacture, most of which are constructed with high hoods, with low fenders, or with low driver seats, resulting in making it difficult, if not impossible, for the driver from his seat in the vehicle to observe the outer limits or width of the vehicle which he is driving.

By pointing out to the driver the exact width of the vehicle he is driving, the device tends to the avoidance of accidents and aid the driver to drive the vehicle in smaller spaces and also in parking the vehicle.

The device of the patent in suit is simple in construction and easy of application to the fender of a motor vehicle, but this does not detract from the inventive concept.

Defendant offered in evidence the following prior art patents and publications:

United States patent No. 1,039,554, to Lindhorst, is for a device for supporting a plurality of flags on the mudguard of an automobile. The sockets of the flagstaffs are arranged in a row across the top of the fender, and the flags are so supported that none of them could be in the same plane or in a parallel plane to the edge of the mudguard or fender. This patent does not disclose a fender guide nor anything which could be used as a fender guide. The patentee of the patent in suit gained nothing from the teachings of this patent.

United States patent No. 1,065,685, to Hibbard, is for another form of flag holder, which is arranged to be detachably secured on the top of an automobile fender, with the flagstaff away from the edge of the fender. There is no teaching in this patent of a fender guide.

United States patent No. 1,096,869, to Thorpe, is for still another form of flag holder, on which a pennant may be carried. The holder is designed to be detachably attached to a fender, and the socket for the staff of the pennant is on the top of the fender and away from the edges of the fender with which the pennant has no relation. This patent does not teach the invention of the patent in suit.

United States patent No. 1,138,964, to Loungley, is for a detachably connected flag holder, consisting of a clamp for gripping the edges of the fender, and an upstanding arm to which a stem, located midway between the edges of the fender, is attached. The stem has no definite relation to nor would it give any indication of the edge of the fender. There is nothing in the teachings of this patent which disclose the invention of the patent in suit.

United States patent No. 1,443,945, to Cappell, is for a traffic signal, and is so described by the patentee in the specification, in which he says:

"This invention relates to traffic signals and more particularly to a device carried by a vehicle for indicating that the same has the right of way and it is the object of this invention to provide means whereby one of

two vehicles approaching a street intersection will show that it has the right of way."

The patent shows an upwardly extending support, adapted to be secured at the lower end to the edges of a fender. The upstanding member carries an arrow upon which appears "Right of Way." There is also disclosed above the right of way signal a lamp to illuminate the signal at night. The lamp is for the benefit of approaching drivers, and is so shielded that it cannot be seen by the driver of the car carrying the device. To avoid the projection of any part of the device beyond the plane of the edge of the fender, there is provided an outwardly bowed portion fitting around the edge of the fender, with the result that the casing of the lamp and the upstanding member are located inwardly removed from the edges of the fender, and do not indicate the position of the edge of the fender on which the device is mounted.

The patent expressly provides that the device be placed on the left-hand side of the vehicle. This is in harmony with the purpose of the device, as a warning signal for the benefit of an approaching driver, but as a fender guide it is the outer edge of the fender on the right side of the car which the driver desires to have indicated, rather than the side of the car immediately in front of him, although some drivers like to have them on both sides.

The device of this patent could not be placed on the right side of the car, as the arrow would then point toward the rear, but, even if it could, it is not a fender guide, as defined in the patent in suit, and would not be serviceable as such without being reorganized and relocated. This patent was not cited by the Examiner in the Patent Office, but, even if it had been so cited, it would not have justified the rejection of the claims in suit.

 This patent was not designed for the same purpose as the patent in suit, and no person using it would have understood that it could be used for the same purpose, in the way described in the patent in suit, and novelty is not negatived thereby. Eames v. Andrews, 122 U. S. 40, 7 S. Ct. 1073, 30 L. Ed. 1064; Clough v. Barker, 106 U. S. 166, 1 S. Ct. 188, 27 L. Ed. 138; Block v. Nathan Anklet Support Co. (C. C. A.) 9 F.(2d) 311; Radio Corporation of America v. Twentieth Century R. Corp. (C. C. A.) 19 F.(2d) 290, 293.

United States patent No. 1,497,608, to Strong. This patent is for an automobile passing safety light, adapted to be secured to the forward left-hand fender or mudguard of an automobile, to illuminate the left-hand front wheel and the ground adjacent thereto, to assist the operator of an approaching automobile in determining its location and pass it in safety. The device also consists of a combined mirror and warning sign. The device of this patent is not a fender guide, nor may it be employed for that purpose, and does not disclose the features of the patent in suit.

United States patent No. 1,518,787, to Hall, does not disclose a fender guide, but merely a combined lamp and mirror, to be placed on top of an automobile fender on the left, the driver's side, and designed particularly for use as a parking light and rear mirror. This device cannot perform the function of the device of the patent in suit.

United States patent No. 1,597,266, to Dearman. This patent is for a flagstaff holder designed for attachment to an automobile, so that the flag may be supported on an automobile for decorative or signal purposes.

As illustrated, it comprises a body 1, having a socket 3, open at the top, into which a flagstaff 2 is adapted to be inserted and to be secured therein by a screw 4. The lower end of the body 1 is provided with a clamp 15, provided with leaves 18 and 19, adapted to embrace the depending flange 16 of the mudguard 12 or similar flange 17 of the mudguard 14. The leaves of the fender are drawn together to secure the body 1 to the fender by means of screws 21. The clamp is attached to the body 1 by screws 23 and 26, which are long or short depending upon how far the flange 16 is inwardly removed from the edge of the fender or similar part, so that the notch 9 in the body 1 can overlie the latter.

Dearman's invention was in providing a clamp and socket for a flagstaff regardless of the place to which it is applied on the automobile. In his specification he says:

"While it has been stated that the flag holder is to be applied to the mudguard of an automobile, it will be obvious that it could also be engaged with other portions of the vehicle or applied to any support having a portion adapted to fit between the leaves of the clamp."

Further showing that the flagstaff was not designed for service as a fender guide, in that it need not be vertically disposed, the specification says:

"After the bolt has been passed through the socket member, sleeve and leaves of the

clamp, its securing nut 25 is tightened and the socket member will be held in place but permitted of being swung about the bolt so that it may be angularly · adjusted after the clamp has been engaged."

The language of the specification further shows that the invention · was in the holder, and neither hints nor suggests that the holder may be arranged, located, or proportioned for use as a fender guide, where it says:

"While it has been stated that the socket is to carry a flag, employed for decorative purposes, it will be understood that a signal flag or any other object provided with a stem or staff which would fit into the socket could be mounted therein."

There is no limitation in the patent as to the height of the staff, and it may be so tall or so short that the driver could not see the top without taking his eyes off the road.

· The ball at the top is not shown in the drawings, nor is it described in the specifications as being any larger than the diameter of the staff, and therefore the staff is not provided with an enlargement, as defined in the patent in suit.

Wherever located, the staff was designed to be used for decorative or signal purposes, not as a fender guide, and, when used as intended with a flag, the fluttering of the flag would tend to defeat the purpose of a fender guide by hindering the driver more than it would aid him.

This patent was cited by the Patent Office during the prosecution of the application for the patent in suit. This patent does not suggest, much less teach, the invention of the patent in suit.

Automobile Trade Journal of July, 1917, page 218. This article discloses a lamp secured on the fender of an automobile, lit by electricity, green lenses front and rear, a signal device for drivers of approaching vehicles, either from front or rear. It teaches nothing of the invention of the patent in suit.

Automobile Trade Journal of March, 1915, page 169, discloses a small lamp designed to be clamped to the left front fender, to show an approaching car the exact location of the left front wheel. The manner in which the light is attached prevents its use as a fender guide for the driver of the car to which it is attached. It neither teaches nor is it capable of performing the functions of the invention of the patent in suit.

Defendant flatters the prior art by word of mouth, but flatters the patent in suit by imitation.

Of course, after the event the invention to us seems small, but the fact remains that no one prior to the patentee of the patent in suit invented a fender guide. Faries Mfg. Co. v. George W. Brown & Co. (C. C. A.) 121 F. 547, 550; Webster Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; Miehle Printing Press & M. Co. v. Whitlock P. P. & M. Co. (C. C. A.) 223 F. 647, 649, 650.

That the patent in suit has utility is apparent in the light of experience, and the patent in suit has had commercial success. Vacuum Cleaner Co. v. American Rotary Valve Co. (D. C.) 227 F. 998, 1002.

Defendant at least thinks well enough of it to imitate it rather than follow the prior art, and that may properly have weight in determining the question now at issue.

■ That the device of the patent in suit is simple in construction is no proof of lack of invention. Kurtz v. Belle Hat Lining Co. (C. C. A.) 280 F. 277; Gould Coupler Co. v. Pratt. (C. C.) 70 F. 622, 624; George Frost Co. v. Cohn (C. C.) 112 F. 1009, 1011, 1012; The Barbed Wire Patent, 143 U. S. 275, 277, 278, 282, 283, 12 S. Ct. 443, 36 L. Ed. 154.

I cannot agree with the contention of the defendant that the patentee in the patent in suit merely applied an old device in the same or an analogous art to a new use, nor can I agree with the defendant's contention that, if the defendant's device infringes, it is clearly anticipated by the patent to Dearman and the patent to Cappell.

On the contrary, as I have hereinbefore pointed out, I believe the patentee of the patent in suit made a worthy but small invention, which was not anticipated by Cappell and Dearman.

That the plaintiff Dujardin may have thought, in the light of human experience, that the life of the device of the patent in suit, as a novelty, might be a short one, does not prove lack of invention; on the contrary, if proof was required of anticipated long life of any novelty, many of them would be debarred from patent protection, although the invention was meritorious.

As my determination of the validity is not based on the presumption of patentability which attends the issuance of the patent in suit, no discussion of the contention of the defendant, based upon an alleged violation of the Rules of the Patent Office, is required.

· I hardly think it necessary to discuss Defendant's Exhibits B, E, F, G, H, I, and J, as none of them, so far as the evidence shows,

has had any commercial success, and I think I have made my position plain as to flags and arrows in my consideration of the prior art.

The patent in suit is valid and infringed by the defendant.

The plaintiff is entitled to a decree against the defendant for an injunction and damages with costs, with the usual order of reference.

Submit proposed findings of fact and conclusions of law in accordance with this opinion, for the assistance of the court, as provided by the rules of this court. Settle decree on notice.